[Cite as *In re D.F.*, 2017-Ohio-2711.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| | ) | |
| D.F., | ) | |
| R.M., | ) | CASE NO. 16 NO 0439 |
| Ru.M., | ) | |
| D.M. | ) | OPINION |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:　　Civil Appeal from Court of Common Pleas, Juvenile Division of Noble County, Ohio
Case No. 214-3034, 3035, 3036, 3037

JUDGMENT:　　　　　　　　　　Affirmed

APPEARANCES:
For Appellee　　　　　　　　　　Kelly A. Riddle
Noble County Prosecutor
150 Courthouse
Caldwell, Ohio 43724

For Appellant　　　　　　　　　Attorney Robert Henry
200 Putnam St., Suite 624
Marietta, Ohio 45750

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: May 5, 2017

DONOFRIO, J.

{¶1} Appellant, Brandy M., appeals from a Noble County Common Pleas Court judgment granting permanent custody of her four children to appellee, the Noble County Department of Jobs and Family Services.

{¶2} Appellant is the mother of four children: D.F. (d.o.b. 9/23/01); R.M. (d.o.b. 12/13/04); Ru.M. (d.o.b. 8/31/06); and (D.M. (d.o.b. 9/26/08). Appellant is married to the father of the three younger children. The oldest child's father is unknown.

{¶3} Appellant, the father, the children, and appellant's mother resided together in Noble County. Sometime in 2014, R.M. disclosed to a teacher that her father was inappropriately touching her at home.[1]

{¶4} On December 11, 2014, appellee filed a complaint asserting that the children were abused and neglected. The complaint was based on allegations that the father had been sexually abusing R.M., Ru.M., and D.M. and appellant knew of the abuse and did nothing about it. The trial court granted appellee temporary custody of the children. The children were placed in foster care. When the children were removed from the home, the caseworker found that the home was filthy and unsanitary with dog feces on the floor.

{¶5} The father was convicted of rape and gross sexual imposition for his offenses against R.M. He is serving a prison term until 2031.

{¶6} The court appointed a guardian ad litem (GAL) for the children. Appellant was granted unsupervised visitation in her home every Saturday.

{¶7} On January 20, 2015, the trial court adjudicated R.M. to be an abused child and the other children to be neglected children. Appellant agreed with these dispositions. The court found that the father pleaded guilty and had been convicted of rape and gross sexual imposition perpetrated on R.M. A case plan was put in place and the children remained in appellee's custody in foster care.

{¶8} On July 22, 2015, appellee filed a motion for permanent custody of the

---

1 The first filing in this case is the complaint dated December 11, 2014. However, the parties make reference to R.M.'s disclosure occurring on January 31, 2014, and the testimony suggests the children may have been removed from appellant's home at that time. A date certain for their removal is not substantiated in the record, however.

children. The motion asserted that the children had been in appellee's temporary custody for at least 12 months of a consecutive 22-month period. Appellee also asserted that it received a report from a psychologist who interviewed appellant and who had multiple concerns about appellant's ability to protect the children and did not believe the concerns could be cured by any type of treatment.

{¶9} On August 21, 2015, the grandmother filed a motion for custody of the children. Based on her motion, the trial court made her a party to this case.

{¶10} Also on August 21, the trial court temporarily suspended appellant's visitation after the children returned from visits multiple times with lice. Visitation resumed on September 12, 2015, with visitation occurring every Saturday from 8:30 a.m. until 3:00 p.m., in appellant's home.

{¶11} The trial court held a hearing on appellee's motion for permanent custody on June 8, and October 26, 2015. It heard testimony from many witnesses including appellant, the grandmother, the GAL, the caseworker, and the psychologists and counselors involved.

{¶12} The trial court granted appellee's motion for permanent custody. The court found the father had been convicted of raping one of the children and the other three children were living in the home when the rape occurred. It further found appellant was unable or unwilling to prevent the children from suffering physical, emotional, or sexual abuse. It noted that R.M. reported to appellant that her father had sexually abused her and appellant refused to believe R.M., refused to investigate, and failed to report the matter to authorities. The court found that appellant still refuses to believe the abuse occurred even though the father has confessed. The court went on to find that the best interest factors supported a conclusion that permanent custody was in the children's best interest. And the court concluded that the children could not be placed with either parent within a reasonable time.

{¶13} Appellant filed a timely notice of appeal on December 5, 2016. She now raises two assignments of error. The grandmother did not file an appeal.

**{¶14}** A parent's right to raise his or her children is an essential and basic civil right. *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). "Permanent termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.' *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45, 54." *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). However, this right is not absolute. *In re Sims*, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, ¶ 23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. *Id.*

**{¶15}** We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion. *Sims*, 7th Dist. No. 02-JE-2, ¶ 36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶16}** Appellant's first assignment of error states:

THE JUVENILE COURT ABUSED ITS DISCRETION, AND ITS JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHEN IT FOUND THAT THE MOTHER WAS UNABLE OR UNWILLING TO PREVENT FUTURE CHILD ABUSE PURSUANT TO R.C. 2151.414(E)(14)[.]

**{¶17}** Appellant argues the trial court erred in failing to make findings going to the statutory best interest factors other than finding that she is unwilling to prevent her children from suffering physical, emotional, or sexual abuse. She claims there was evidence as to several other best interest factors yet the trial court only cited the one factor.

**{¶18}** Appellant further argues the trial court's finding that she was unwilling to prevent the abuse was not supported by the evidence. Instead, she claims the evidence demonstrated that she was horrified by the sexual abuse and that she

wanted to protect her children. Appellant points out there is no allegation that she abused her children and the person who did abuse them is currently incarcerated. And she asserts she complied with all of her case plan directives.

{¶19} Pursuant to R.C. 2151.414(B)(1):

[T]he court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * *.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶20} Thus, in order to grant permanent custody to the agency, the trial court must make one of the five findings set out in R.C. 2151.414(B)(1)(a) through (e) and

make a best interest finding.

**{¶21}** Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985).

**{¶22}** In the present case, the trial court found that the children cannot be placed with either parent within a reasonable time. Thus, it made the finding set out in R.C. 2151.414(B)(1)(a). It also found that it was in the children's best interest to grant their permanent custody to appellee. Thus, the court made the two findings necessary to grant permanent custody.

**{¶23}** In making its finding that the children could not be placed with either of their parents within a reasonable time the court made separate findings as to each parent.

**{¶24}** R.C. 2151.414(E) governs findings that a child cannot be placed with either parent within a reasonable time or should not be placed with either parent. Pursuant to that section:

> If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
> * * *
> (7) The parent has been convicted of or pleaded guilty to one of the following:
> * * *
> (d) An offense under section 2907.02 [rape], 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code * * * and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
> * * *

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

R.C. 2151.414(E)(7)(d),(14).

**{¶25}** As to the father, the trial court found R.C. 2151.414(E)(7)(d) applied because the father was convicted of raping R.M.

**{¶26}** As to appellant, the court found R.C. 2151.414(E)(14) applied because she was unable or unwilling to prevent a child from suffering physical, emotional, or sexual abuse. It based this finding on its finding that R.M. told appellant that the father had sexually abused her yet appellant failed to report the matter to authorities, did not believe R.M., and failed to even investigate. The court further found that to this date, appellant still fails to believe the abuse even though the father confessed. Finally, the court found appellant lacks the capacity and/or will to reasonably parent the children.

**{¶27}** Appellant argues the evidence does not support the trial court's R.C. 2151.414(E)(14) finding. But clear and convincing evidence supports the court's finding.

**{¶28}** Debbie Schockling is the caseworker for this case. Schockling testified regarding R.M.'s disclosure of the sexual abuse to appellant and her grandmother. Schockling stated that R.M. told appellant and her grandmother about the sexual abuse but they called her a liar and did not believe her. (Tr. 32). They blamed R.M. for the breakup of their family. (Tr. 32). They visited the father in jail. (Tr. 32). They allowed the children to talk on the phone with the father while he was in jail. (Tr. 32). If the children did not want to speak with the father, appellant would get mad at them. (Tr. 32).

**{¶29}** Candy Barr, the children's therapist, testified that R.M. had disclosed an incident where the father was in bed with R.M. and appellant walked in on them. (Tr. 94). She stated that appellant asked what was going on but did not pursue the issue

any further.  (Tr. 95).

**{¶30}** Barr also testified about a conversation between her, appellant, and Ru.M.  She testified Ru.M. was talking about a time he was playing behind his father's chair and the father became irritated with him.  (Tr. 95).  Ru.M. stated that the father then cut him on the chest with a pocket knife.  (Tr. 95).  Ru.M. showed Barr the scar.  (Tr. 95).  When Ru.M. disclosed this incident, appellant jumped up and put her finger in Ru.M.'s face and said, "It didn't happen that way.  A dog scratched you." (Tr. 95).

**{¶31}** Appellant claimed she did not know about the abuse when it was going on.  (Tr. 127).  She also stated that after the father was arrested she would visit him in jail so she could figure out what was going on and why he would put *her* through this.  (Tr. 128).  Appellant admitted she and her mother were both living in the home when the father molested R.M.  (Tr. 134-135).  She claimed she did not know what the father was doing and claimed R.M. never told her about the abuse.  (Tr. 135).  When asked whether she believed the father molested R.M., appellant responded, "I don't know what to believe" and then later, "I can't say it did [happen] and I can't say it didn't.  I did not see it." (Tr. 136).  She then stated that she still does not know what happened and does not want to know.  (Tr. 136-137).  Again she questioned why the father would put *her* through this.  (Tr. 138).

**{¶32}** This evidence supports the trial court's finding that appellant was unable or unwilling to prevent a child from suffering physical, emotional, or sexual abuse.  The evidence supports a conclusion that R.M. disclosed to appellant that her father was abusing her and appellant did nothing.   Appellant even walked in on one incident of abuse and only asked what was happening.  She did nothing to protect her child from the sexual abuse.  Even after the father pleaded guilty and was serving a prison sentence for raping R.M., appellant still did not believe that he raped R.M.  Moreover, when Ru.M. disclosed that the father had cut him with a knife, leaving a scar on his chest, appellant defended the father and told Ru.M. the scar was from a dog scratching him.

**{¶33}** Thus, the trial court's finding that the children cannot be placed with appellant is supported by competent, credible evidence.

**{¶34}** Appellant also argues in this assignment of error that the trial court erred by failing to make specific findings going to each of the best interest factors.

**{¶35}** In determining whether it is in the child's best interest to grant custody to the agency, the court shall consider:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, * * * with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child [regarding certain crimes, withholding food or medical treatment, drug and alcohol abuse, abandonment, and having previously had parental rights terminated].

R.C. 2151.414(D)(1).

**{¶36}** In this case, the trial court simply found: "A consideration of the factors found in R.C. 2151.414(D) supports a conclusion that permanent custody is in the best interests of the children." The court did not elaborate further.

**{¶37}** Earlier in its judgment entry, the court addressed two of the five best interest factors when discussing why the children could not be placed with either

parent. The court found that R.C. 2151.414(E)(7) applied in this case because the father was convicted of raping one of the children. This goes to the best interest factor set out in R.C. 2151.414(D)(1)(e). Additionally, the court found that the children have been in appellee's temporary custody for 12 or more months of a consecutive 22-month period. This finding is relevant as to the children's custodial history, which is the best interest factor set out in R.C. 2151.414(D)(1)(c). Thus, the court did make findings as to two of the five factors.

{¶38} Moreover, although it would have been the better practice to make specific findings, the trial court was not required to make specific findings as to each best interest factor as appellant alleges.

{¶39} Other courts have found that the trial court's indication that it considered the R.C. 2151.414(D)(1) best interest factors is sufficient. For instance, in *In re M.R.*, 3d Dist. No. 4-12-18, 2013-Ohio-1302, ¶ 78, the court found that, "[w]hile it is far from the better practice, we find that the trial court's citation to the appropriate statute when making its best interest finding meets its obligation, albeit to the minimum extent possible, in demonstrating that the R.C. 2151.414(D) factors were considered." And in *In re R.H.*, 9th Dist. Nos. 11CA010002, 11CA010003, 2011-Ohio-6749, ¶ 18, the court found: "In this case, although the better practice would have been for the trial court to more fully articulate its reasoning for its ultimate best interest finding, Father has failed to demonstrate that the trial court committed reversible error by failing to do so."

{¶40} Furthermore, an examination of the evidence reveals that clear and convincing evidence supports the trial court's best interest determination.

{¶41} In addition to the testimony set out above, Debbie Schockling, the caseworker testified that she met with R.M. at her school and R.M. disclosed to her that the father had inappropriately touched her. (Tr. 26). She stated the children were immediately removed from the home and placed in foster care. (Tr. 26). Schockling testified that at that time, the plan was to reunite the children with appellant. (Tr. 26). Appellee set up visitation with appellant, suggested counseling,

and worked on a reunification plan. (Tr. 27). Schockling stated that appellant followed the case plan. (Tr. 27). There were some issues, however, Schockling stated. For instance, for a period of time during the summer, there was an issue with lice where appellee had to suspend visitation until appellant could remedy the situation. (Tr. 27). Schockling stated that appellant has moved three times during the pendency of this case and her current trailer is now suitable for children. (Tr. 27-28). However, at the time the children were removed, appellant's house was filthy and unsanitary. (Tr. 29). Schockling also testified that when the children were removed, they had issues with medical and dental care not being kept up to date. (Tr. 30).

{¶42} Additionally, Schockling stated that the children are frightened that the father could get out of prison and harm them and they do not feel safe with appellant. (Tr. 33-34). Schockling stated that it also came out that the father sexually abused two of the other children too. (Tr. 46).

{¶43} Finally, Schockling testified that appellant loves her children and the children still have a bond with appellant. (Tr. 44-45). And she acknowledged that appellant has been compliant with her case plan. (Tr. 45). Nonetheless, Schockling stated that she still has concerns that rose to the level of seeking permanent custody. (Tr. 45-46).

{¶44} Chastity Wheeler is the foster care coordinator that handled this case. Wheeler testified that the children want to return home to a certain degree but they are also fearful to go home. (Tr. 61). In addition to fear of their father, the children also fear not having enough food to eat or somewhere to live if they are returned to appellant. (Tr. 61). Wheeler testified that three of the children were sexually abused by the father while living at home with appellant and their grandmother. (Tr. 62).

{¶45} Wheeler also testified that her agency could assist appellee in searching for an adoptive family that would take all four children if appellee received permanent custody. (Tr. 60).

{¶46} Gary Wolfgang is a psychologist and clinical counselor who evaluated

appellant. Wolfgang testified as to his concerns with appellant. He was concerned with the fact that she was sexually abused in the past and had not adequately processed that abuse. (Tr. 71-72). He was concerned with appellant's thoughts, feelings, and attitudes toward the abuse her children suffered. (Tr. 72). He stated appellant did not want to know what happened to the children or how often they were abused. (Tr. 72). Wolfgang stated appellant did not know the duration or intensity of the abuse or any detail as to what her children had gone through. (Tr. 72). This caused him to be very concerned with how appellant would handle their trauma. (Tr. 72). Wolfgang was also concerned with appellant's ability to pick future partners. (Tr. 72). Additionally, Wolfgang was concerned that appellant lacked in her own self-care. (Tr. 72). He was concerned that she did not tend to her own medical needs. (Tr. 72-73). Wolfgang opined that all of these issues suggested significant problems would be very likely if the children were returned to appellant. (Tr. 73).

{¶47} In addition to her testimony discussed above, Candy Barr, the children's therapist, testified about each of the children when she first met them. She stated that R.M. had been acting as the parent figure in the home. (Tr. 88). The other children looked to her for rules and discipline. (Tr. 88). She stated that D.F. exhibited a lot of fear symptoms and an unwillingness or inability to process his feelings. (Tr. 89). Ru.M., Barr stated, was very fearful of knives and of people getting out of prison. (Tr. 89-90). She stated he has also acted out by touching the other children inappropriately. (Tr. 90). D.M., Barr stated, had refused to eat and had been very stressed. (Tr. 90). Barr testified that since they have been in foster care, all of the children had improved physically, socially, emotionally, and cognitively. (Tr. 90). When asked about her recommendation, Barr stated that while she believed that appellant cared about the children, she opined appellant had missed so much and failed to address so much that it would be very difficult for the children to go home and be safe. (Tr. 92). Barr based her opinion on the pervasive sexual abuse and neglect that happened with appellant in the home that she did nothing about. (Tr. 92).

{¶48} Additionally, Barr testified regarding the children's wishes and concerns. She stated that R.M. and Ru.M. have expressed that they are very concerned about returning home due to concerns for their safety, about the father getting out of prison, about being forced to have contact with the father, about food, and about general security. (Tr. 101). D.F., who has always denied any abuse, wanted to return home. (Tr. 104).

{¶49} Julie E. is the children's foster mother. She stated that when the children first came into her care, they were all very fearful. (Tr. 112). Additionally, the children had to stay in her sight at all times due to inappropriate behavior among them. (Tr. 113). She had to put baby monitors in their bedrooms so that they could be monitored at night. (Tr. 113). Since they have been in her care, however, Julie testified that they have all showed progress in school and in their behavior. (Tr. 113-115). Julie testified that when the children come home from their weekly visits with appellant, the children, especially D.M, act out. (Tr. 115-116). She stated that recently appellant has had boyfriends over while the children were there and that has caused the children stress and nightmares. (Tr. 116). She stated that appellant allowed one of the boyfriends to live with her because he did not have anywhere else to live. (Tr. 119).

{¶50} Julie testified that sometimes the children get along and other times they do not. (Tr. 116). She pointed out that when they first came into her care all of the children looked to R.M. as the one in charge. (Tr. 116-117).

{¶51} Julie testified that she was not considering adopting the children. (Tr. 118). She also stated that appellant attends all of her visits. (Tr. 118-119).

{¶52} In addition to her testimony discussed above, appellant testified that she currently lives in a three-bedroom trailer with her mother. (Tr. 122-123). Appellant testified she receives social security because she is unable to work due to having suffered several strokes. (Tr. 124). Appellant testified that she has never missed a visit with the children. (Tr. 125). She also stated she has complied with her case plan including having a psychological evaluation and attending counseling. (Tr.

125). However, she stated that she only talked about the abuse her children suffered once or twice during counseling because she does not like to talk about it. (Tr. 127).

**{¶53}** Finally, the grandmother testified. The grandmother stated that she believed that the father abused the children based on the fact that he pleaded guilty. (Tr. 142). She admitted that she lived in the home while the abuse was occurring. (Tr. 143). The grandmother also admitted that R.M. told her that her father had sexually abused her and the grandmother told R.M. that she did not believe her. (Tr. 156). She admitted she did nothing to investigate R.M.'s disclosure to her. (Tr. 156). The grandmother stated that she too had a case plan that she complied with including counseling. (Tr. 146). The grandmother testified that when appellant was younger, appellant's father sexually abused appellant and instead of reporting it to authorities, the grandmother beat him with a baseball bat. (Tr. 146, 155).

**{¶54}** In addition to the testimony, the court also considered the GAL's report. The GAL reported that appellant's current home was in a suitable condition for habitation with the exception of needing one more bed. At his visit with the children in 2015, they expressed a desire to return home. But in 2016, Ru.M. expressed his desire to remain in foster care with his siblings. Ru.M. expressed fear of his father and fear that appellant and the grandmother would not provide food for the children. D.F. expressed his desire to return to appellant. R.M. and D.M. expressed a desire to return to appellant but also expressed anxiety about appellant's ability to protect them and provide them with sufficient food. The GAL reported that the children are doing well in school while in foster care.

**{¶55}** The GAL recommended that the court grant the permanent custody motion. He based this opinion on numerous observations. Appellant and grandmother continued to allow the children to have telephone contact with the father. During one such call, the father threatened R.M. The foster mother reported working to keep the children from acting out sexually and fighting with each other yet appellant reports she has no issues during visitation. Despite appellant's statement, the children return from appellant's care with bruises and red marks they report stem

from fighting. This leads to the conclusion that appellant is either lying about the fighting or is ignorant of it. This also caused the GAL to believe that sexual contact may be occurring at appellant's home, which is either unknown or unmitigated. The GAL found significant an observation from appellant's psychologist that the children would be exposed to neglectful and harmful parental behaviors and circumstances if they were returned to appellant's care.

**{¶56}** As to the first best interest factor, the children's interaction and interrelationship with others, the evidence suggested that despite the abuse that occurred under appellant's watch, the children still have a bond with appellant. The evidence also suggested that the children behave as siblings do with each other, sometimes getting along and sometimes arguing. The evidence also demonstrated that the three boys all look to R.M. as a mother figure. R.M. had assumed the role as the parent of her siblings while they resided with appellant. The evidence also demonstrated that since entering foster care, the children's behavior, relationships, and school performance had all improved.

**{¶57}** As to the second best interest factor, the children's wishes, the evidence demonstrated several things. First, D.F. has always expressed a desire to return home. Second, although they initially wanted to return home, over time R.M., Ru.M., and D.M., now have mixed feelings. Ru.M. wants to remain in foster care with his siblings. R.M. and D.M. have expressed some desire to return home but have also expressed fear and anxiety about returning home. Their fear goes to their basic needs of security and having enough food not being met by appellant.

**{¶58}** As to the third best interest factor, the custodial history of the children, the testimony indicated the children had been in appellee's temporary custody since February 2014. The first filing in this case, however, was in December 2014. Thus, there is some uncertainty as to when the children entered appellee's temporary custody. Nonetheless, by the time of the final hearing on October 26, 2016, the children had been in appellee's temporary custody for a minimum 22 months and possibly for as many as 33 months.

{¶59} As to the fourth best interest factor, the children's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody, the testimony indicates that appellant cannot provide a secure home for the children and the foster mother was not willing to adopt them. The foster care coordinator indicated that if the court granted the permanent custody motion, her agency would help in the adoption process to look for a family that would adopt all four children.

{¶60} And as to the final best interest factor, whether any of the factors in R.C. 2151.414(E)(7) to (11) applied to the parents and children in this case, as discussed above, R.C. 2151.414(E)(7) applies because the father was convicted of raping R.M.

{¶61} The best interest factors weigh in favor of granting permanent custody to appellee. Although the children are still somewhat bonded to appellant, they are afraid to return to her care, with the exception of D.F. Appellant demonstrated to them that she could not keep them safe and provide for their basic needs. Moreover, since entering foster care, all of the children have shown improvement in their behavior, relationships, and school performance. Additionally, the children have been living in limbo for the past two to three years. They cannot return home and their foster mother is not seeking to adopt them. Without a grant of permanent custody, they will not be able to have a legally secure, permanent placement. For all of these reasons, the trial court did not abuse its discretion in finding that it was in the children's best interest to grant the permanent custody motion.

{¶62} Accordingly, appellant's first assignment of error is without merit and is overruled.

{¶63} Appellant's second assignment of error states:

THE JUVENILE COURT ABUSED ITS DISCRETION, AND ITS JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT FOUND THAT REASONABLE EFFORTS WERE MADE TO PREVENT REMOVAL, AND TO ELIMINATE THE

CONTINUED REMOVAL OF THE CHILDREN, OR TO MAKE IT POSSIBLE FOR THE CHILDREN TO RETURN HOME SAFELY BY CONTINUALLY WORKING WITH THE APPELLANT, BUT FAILURE OR INABILITY OF THE APPELLANT TO REASONABLY COMPLY RESULTED IN FAILURE.

**{¶64}** Here appellant contends she complied completely with her case plan but, nonetheless, the trial court found her failure or inability to reasonably comply with the case plan resulted in a failure. Appellant argues there was no more she could have done to complete her case plan. Appellant points out that appellee's witness testified that she completed all parts of her case plan and never missed a visit with the children. And she notes that she resolved all cleanliness issues at her house. Finally, she asserts the only negative conclusions about her came from the GAL's report, which was filed one year prior to the permanent custody hearing, and those were contradicted at the hearing.

**{¶65}** Compliance with a case plan alone does preclude a trial court from granting an agency's motion for permanent custody. *In the Matter of C.G.*, 7th Dist. No. 16 JE 0023, ¶ 88, citing *In re C.C.*, 187 Ohio App.3d 365, 2010-Ohio-780, 932 N.E.2d 360, ¶ 25 (8th Dist.). "[A] parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed — the case plan is simply a means to a goal, but not the goal itself." *Id.*

**{¶66}** In this case, despite appellant's compliance with visitation and counseling, the conditions that caused the children to be removed from the home have not been remedied. At the time of the hearing, appellant was still in denial about the abuse her children suffered. Despite the fact that the father pleaded guilty to raping one of the children, appellant stated that she was not sure what to believe. Moreover, three of the children were still fearful of returning to appellant's care due to concerns that appellant could not provide them with safety, security, and food. Thus, even though appellant demonstrated compliance with the case plan, she had not come to terms with the abuse her children suffered at the hands of their father and

her role in allowing it to occur.

**{¶67}** Additionally, appellant asserts the GAL report was not current because it was filed a year prior to the permanent custody hearing.

**{¶68}** The GAL did submit a report on December 15, 2015, which was approximately six months prior to the first date of the permanent custody hearing (June 8, 2016). But the GAL submitted a supplement to his report on July 5, 2016, which was in between the two permanent hearing dates (June 8, and October 26, 2016). Thus, the trial court did have a current report from the GAL.

**{¶69}** Accordingly, appellant's second assignment of error is without merit and is overruled.

**{¶70}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.