**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re A.M.*, Slip Opinion No. 2020-Ohio-5102.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-5102

IN RE A.M.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re A.M.*, Slip Opinion No. 2020-Ohio-5102.]**

*R.C. 2151.414(D)(1) does not require a juvenile court to make specific findings regarding each best-interest factor listed in R.C. 2151.414(D)(1) or to include in its decision or judgment entry a written discussion of each of those factors.*

(No. 2019-0923—Submitted June 2, 2020—Decided November 3, 2020.)

APPEAL from the Court of Appeals for Hamilton County, No. C-190027, 2019-Ohio-2028.

_____

FRENCH, J.

{¶ 1} This appeal asks us to consider the contours of the statutory requirement that juvenile courts consider the factors set out in R.C. 2151.414(D)(1) for determining a child's best interest before granting a motion filed by a public children-services agency or private child-placing agency for permanent custody of that child.

**{¶ 2}** The First District Court of Appeals affirmed the judgment of the Hamilton County Court of Common Pleas, Juvenile Division, which granted permanent custody of A.M. to appellee, the Hamilton County Department of Job and Family Services. Appellant—A.M.'s mother, Brianna D.—contends that the juvenile court did not comply with the requirement in R.C. 2151.414(D)(1) that it consider all the enumerated factors for determining whether an award of permanent custody to the department was in A.M.'s best interest.

**{¶ 3}** Because we conclude that the juvenile court complied with R.C. 2151.414(D)(1), we affirm the First District's judgment.

### *Facts and procedural background*

**{¶ 4}** Brianna was 16 years old and living in a foster home, in the department's custody, when A.M. was born, in November 2015.

**{¶ 5}** The department first sought temporary custody of A.M. in December 2016, shortly after A.M.'s first birthday, because Brianna was having trouble attending school, was having outbursts in her foster home, and had tested positive for marijuana. Based on stipulations between Brianna and the department, the magistrate modified the department's motion to a motion for interim protective orders, which the magistrate granted.

**{¶ 6}** The magistrate adjudicated A.M. dependent on February 10, 2017, and granted the department protective supervision of A.M. The magistrate incorporated into her decision a report from A.M.'s guardian ad litem that indicated that A.M. appeared to be emotionally attached to Brianna. But the magistrate also found clear and convincing evidence of Brianna's "out of control behaviors," which had led to police involvement, property damage, and Brianna's suspension and expulsion from school. She also found that in October 2016, Brianna left her foster home with A.M. without permission and met with A.M.'s father, who allegedly assaulted Brianna.

{¶ 7} Under the department's protective supervision, A.M. remained with Brianna in her foster home. The magistrate ordered Brianna to undergo mental-health, chemical-dependency, and domestic-violence assessments and to follow all resulting recommendations. She further ordered Brianna to attend school, to not be tardy or disruptive in school or in her foster home, to submit to random toxicology screens, and to successfully complete parenting classes. While many of these orders were directed toward both of A.M.'s parents, we are concerned here only with Brianna.

{¶ 8} In June 2017, the department filed a complaint, affidavit, and motion for interim temporary custody of A.M. and for an order authorizing removal of A.M. from the foster home. The department alleged that since February 2017, Brianna had repeatedly failed to attend school or had been turned away from school due to tardiness, had occasionally failed to make her whereabouts known to her foster family while leaving A.M. in the foster mother's care, and had continued to test positive for marijuana. The agency also alleged one instance in which Brianna had become upset and stated that she wanted to sign away her parental rights to A.M. Based on stipulations by the parties, the magistrate granted the department's motion for interim temporary custody on June 15, concluding that it would be contrary to A.M.'s best interest and welfare to remain in the foster home with Brianna.

{¶ 9} In a decision issued September 20, 2017, the magistrate terminated the June 2017 interim orders and granted the department temporary custody of A.M. The magistrate's findings repeat, nearly verbatim, the allegations from the department's June 2017 complaint. The magistrate again ordered Brianna to participate in the services offered under her case plan. In addition to repeating its previous orders regarding mental-health, chemical-dependency, and domestic-violence assessments, parenting classes, and toxicology screens, the magistrate ordered Brianna to obtain and maintain sobriety, to not test positive for opiates,

alcohol, or other illegal or nonprescribed substances, and to complete high school or obtain a GED. The magistrate ordered Brianna to obtain and maintain a stable income and housing if she were to become emancipated.

{¶ 10} Brianna was emancipated in October 2017, shortly after her 18th birthday, upon her request. As a result of her emancipation, Brianna's medical insurance lapsed. At that point, she was unable to reengage with Ohio Mentor, which had previously supervised her visitations with A.M., or to continue her therapy sessions.

{¶ 11} On March 22, 2018, the department filed a motion to modify its temporary custody of A.M. to permanent custody. The department alleged that Brianna had not engaged in mental-health services since November 2017, had not participated in a substance-abuse program, and had admitted to continued marijuana use. A.M.'s guardian ad litem supported the department's motion and stated that a grant of permanent custody was in A.M's best interest due to Brianna's lack of participation in case-plan services, continued use of marijuana, inconsistent visitation with A.M., and general lack of progress with respect to the case plan.

{¶ 12} The magistrate conducted a two-day evidentiary hearing in September 2018. Chris Graham, the caseworker assigned to Brianna and A.M., testified to the "really good relationship," the bond, and the love between Brianna and A.M. But she also testified that Brianna had not completed any of her court-ordered case-plan services. Brianna admitted that despite consistent court orders, she had not fully completed any of her case-plan services. She testified, however, that she had matured and that given more time, she would follow through with those services.

{¶ 13} The magistrate issued a decision on September 17, 2018, granting the department's motion for permanent custody. The magistrate found by clear and convincing evidence that A.M. should not, and could not within a reasonable time,

4

be placed with either parent and that an award of permanent custody to the department was in A.M.'s best interest.

{¶ 14} Brianna filed a timely objection, in which she stated only that the magistrate's decision was against the weight of the evidence and contrary to law. Although Brianna's filing noted that she reserved the right to amend her objection upon receipt of a hearing transcript, she did not do so. The juvenile court heard oral argument on Brianna's objection, during which Brianna's counsel challenged only the magistrate's finding under R.C. 2151.414(B)(1)(a) that A.M. could not be placed with Brianna within a reasonable time. Brianna's counsel did state, "[T]he child is very bonded to [her] mother," and she urged the court to give Brianna "an opportunity to try to do what she needs to do to reunify with her child."

{¶ 15} The juvenile court overruled Brianna's objection and adopted the magistrate's decision. The judgment entry states that the court reviewed the transcript, heard oral arguments, and conducted an independent review of the objected-to matters and that the court found by clear and convincing evidence that the magistrate had properly granted the department's motion for permanent custody. The court independently found that "considering all relevant factors, including but not limited to those found in R.C. 2151.414(D), clear and convincing evidence established that it [was] in [A.M.'s] best interest to be placed in the permanent custody of [the department]."

{¶ 16} On appeal to the First District, Brianna shifted her argument. There, with new counsel, she argued that the juvenile court's determination that a grant of permanent custody was in A.M.'s best interest was not supported by sufficient evidence and was against the weight of the evidence. The court of appeals disagreed and affirmed the juvenile court's judgment in a split decision. It subsequently denied Brianna's requests for en banc consideration and to certify a conflict.

**{¶ 17}** We initially denied Brianna's discretionary appeal, 157 Ohio St.3d 1406, 2019-Ohio-3731, 131 N.E.3d 77, but on reconsideration, we accepted jurisdiction to address a single proposition of law concerning a juvenile court's consideration of the factors listed in R.C. 2151.414(D)(1) for determining the best interest of a child, 157 Ohio St.3d 1520, 2019-Ohio-5289, 136 N.E.3d 526.

*Analysis*

**The statutory framework**

**{¶ 18}** R.C. 2151.414 sets out specific findings a juvenile court must make before granting an agency's motion for permanent custody of a child. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 22. As relevant here, the court must find by clear and convincing evidence (1) that one or more of the conditions in R.C. 2151.414(B)(1)(a) through (e) applies and (2) that a grant of permanent custody is in the child's best interest. R.C. 2151.414(B)(1). In this appeal, Brianna has not challenged the juvenile court's determination that under R.C. 2151.414(B)(1)(a), A.M. should not, and could not within a reasonable time, be placed with either parent. We are therefore concerned only with the juvenile court's determination that a grant of permanent custody to the department was in A.M.'s best interest.

**{¶ 19}** An agency that seeks permanent custody of a child bears the burden of proving by clear and convincing evidence that the grant of permanent custody is in the child's best interest. *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 26. R.C. 2151.414(D)(1) sets out a nonexhaustive list of factors the court must consider:

> In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to, the following:

6

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

The factors in R.C. 2151.414(E)(7) through (11), which are referred to in R.C. 2151.414(D)(1)(e), involve a parent's having been convicted of or pleaded guilty to specific criminal offenses against the child, the child's sibling or another child who lived in the parent's household; a parent's withholding medical treatment or food from the child; a parent's repeatedly placing the child at substantial risk of harm because of alcohol or drug abuse; a parent's abandoning the child; and a parent's having had parental rights as to the child's sibling involuntarily terminated.

{¶ 20} The parties here essentially dispute what a juvenile court must do to comply with, or to demonstrate its compliance with, R.C. 2151.414(D)(1).

**The parties' positions**

{¶ 21} Brianna asks this court to hold that a juvenile court must show *how* it considered each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e) by fully analyzing and discussing each factor. She asks us to determine that the statute requires juvenile courts to provide a written discussion of the statutory best-

interest factors that reflects what evidence the court relied on in its consideration of those factors. Brianna's position is consistent with the dissenting opinion from the First District, which found error based, in part, on the lack of express factual findings in the magistrate's decision or juvenile court's judgment entry relating directly to some of the statutory factors. *See* 2019-Ohio-2028, ¶ 47 (Bergeron, J., dissenting).

{¶ 22} The department, on the other hand, argues that a juvenile court need only *consider* the statutory factors and that it need not specifically discuss each factor to comply with R.C. 2151.414(D)(1). A.M.'s attorney/guardian ad litem similarly argues that the statutory requirement to consider the best-interest factors does not equate to a statutory requirement to discuss them. The department and A.M.'s attorney/guardian ad litem agree, however, that the record must demonstrate that the trial court did, in fact, consider those factors.

## R.C. 2151.414(D)(1) does not require written discussion or factual findings with respect to each best-interest factor

{¶ 23} As we do with any issue of statutory interpretation, we begin by examining the language of the statute. *See In re T.R.*, 120 Ohio St.3d 136, 2008-Ohio-5219, 896 N.E.2d 1003, ¶ 8. We must give effect to the plain meaning of the words the General Assembly has used, and we may not modify an unambiguous statute by adding or deleting words. *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, ¶ 17. If the statutory language is clear and unambiguous, we must apply it as written. *In re T.R.* at ¶ 8. Here, the unambiguous statutory language in R.C. 2151.414(D)(1) resolves the proposition before us.

{¶ 24} As we mentioned above, before granting an agency's motion for permanent custody under R.C. 2151.414(B)(1), a juvenile court must make two findings, one of which is that a grant of permanent custody is in the best interest of the child. And R.C. 2151.414(D)(1) requires that a juvenile court, in determining whether a grant of permanent custody is in the best interest of the child, "consider"

all relevant factors, including the five factors listed in R.C. 2151.414(D)(1)(a) through (e). The parties are essentially arguing about the meaning of the word "consider."

{¶ 25} R.C. Chapter 2151 does not define "consider," so we accord that term its common, everyday meaning. *See Am. Fiber Sys., Inc. v. Levin*, 125 Ohio St.3d 374, 2010-Ohio-1468, 928 N.E.2d 695, ¶ 24. We have previously stated that "consider" means " 'to reflect on: think about with a degree of care or caution.' " *State v. Thompson*, 92 Ohio St.3d 584, 588, 752 N.E.2d 276 (2001), fn. 1, quoting *Webster's Third New International Dictionary* (1986) 483. This common, everyday meaning of "consider" does not encompass a requirement of a written discussion or factual findings.

{¶ 26} In other contexts, this court has held that a requirement to consider enumerated factors does not constitute a requirement that a court explicitly address those factors or that it make specific factual findings. *See, e.g., State v. Douglas*, 20 Ohio St.3d 34, 485 N.E.2d 711 (1985). *Douglas* addressed the interplay between former R.C. 2151.26(A)(3) and former Juv.R. 30(E). At the time, R.C. 2151.26(A)(3) required a juvenile court to determine that a juvenile offender was not amenable to care or rehabilitation in the juvenile system before binding the juvenile over for prosecution in adult court and Juv.R. 30(E) required the court to consider five factors in making that determination. *See Douglas* at 35-36. We held that neither R.C. 2151.26(A)(3) nor Juv.R. 30(E) required the juvenile court to make written findings: "The rule simply requires the court to *consider* these factors in making its determination on the amenability issue." (Emphasis sic.) *Douglas* at 36. We stated, "[A]s long as sufficient, credible evidence pertaining to each factor existed in the record before the court, the bind-over order should not be reversed in the absence of an abuse of discretion." *Id.*

{¶ 27} We employed similar reasoning with respect to former R.C. 2950.09(B)(2), which required courts to consider ten specific factors, as well as all

other relevant factors, in determining whether to classify a defendant as a sexual predator. *See State v. Cook*, 83 Ohio St.3d 404, 700 N.E.2d 570 (1998). In *Cook*, we held that the statute did "not require the court to list the criteria, but only to 'consider all relevant factors, including' the criteria in R.C. 2950.09(B)(2) in making [its] findings." *Id.* at 426.

{¶ 28} We have not previously addressed this question with respect to R.C. 2151.414(D)(1), and the caselaw from the courts of appeals regarding that statute is inconsistent. In the case before us, the majority of the First District panel relied on that court's prior decision that had " 'strongly encourage[d]' " juvenile courts to discuss each of the best-interest factors under R.C. 2151.414(D)(1) but that had refused to find error based on a court's failure to do so when the record otherwise indicated that the court considered all the required factors. 2019-Ohio-2028, at ¶ 26, quoting *In re K.T. 1*, 2018-Ohio-4312, 121 N.E.3d 847, ¶ 46, (1st Dist.). *See also In re W. Children*, 1st Dist. Hamilton No. C-180620, 2019-Ohio-690, ¶ 51 (record must indicate that court considered all best-interest factors, but court need not "specifically discuss" each factor).

{¶ 29} Most other Ohio appellate districts have likewise held that R.C. 2151.414(D)(1) does not require a juvenile court to list or discuss the statutory factors in a best-interest determination. *See In re D.F.*, 7th Dist. Noble No. 16 NO 0439, 2017-Ohio-2711, ¶ 38; *In re A.H.*, 9th Dist. Lorain No. 13CA10454, 2014-Ohio-552, ¶ 11; *In re M.R.*, 3d Dist. Defiance No. 4-12-18, 2013-Ohio-1302, ¶ 78; *In re K.S.*, 6th Dist. Wood No. WD-09-008, 2009-Ohio-3622, ¶ 21; *In re Allbery*, 4th Dist. Hocking No. 05CA12, 2005-Ohio-6529, ¶ 13; *In re I.M.*, 8th Dist. Cuyahoga Nos. 82669 and 82695, 2003-Ohio-7069, ¶ 27; *In re Fouty*, 5th Dist. Guernsey No. 00CA36, 2001 WL 227672, *3 (Mar. 7, 2001).

{¶ 30} Other appellate districts, however, have held the opposite. The Eleventh District Court of Appeals, for example, has held that a "trial court must *discuss*, in its judgment entry, each of the R.C. 2151.414(D) factors when reaching

a determination concerning the best interest of the child" and that "the failure to do so constitutes prejudicial error." (Emphasis sic.) *In re B.D.*, 11th Dist. Lake Nos. 2009-L-003 and 2009-L-007, 2009-Ohio-2299, ¶ 104, citing *In re Bentley*, 11th Dist. Ashtabula No. 2004-A-0075, 2005-Ohio-1257. It stated, "The factors must * * * be given due consideration and carefully discussed in relation to the evidence submitted" to enable full and meaningful appellate review. *Id.* at ¶ 114. And the Tenth District Court of Appeals, despite its recognition that "a trial court is not required to specifically enumerate each factor under R.C. 2151.414(D) in its decision," *In re Heyman*, 10th Dist. Franklin No. 96APF02-194, 1996 WL 465238, *2 (Aug. 13, 1996), has reversed and remanded a permanent-custody judgment for the juvenile court to "issue findings addressing the factors under R.C. 2151.414(D)," *In re Strong*, 10th Dist. Franklin Nos. 01AP-1418 and 01AP-1419, 2002-Ohio-2247, ¶ 49. The Twelfth District also requires juvenile courts to include findings related to the R.C. 2151.414(D) factors in their decisions. *In re A.F.*, 12th Dist. Brown No. CA2006-09-012, 2007-Ohio-1646, ¶ 30. The approach taken by the Tenth, Eleventh, and Twelfth Districts, however, improperly extends R.C. 2151.414(D)(1) beyond its plain meaning.

{¶ 31} Based on the plain and unambiguous statutory language, and consistently with our treatment of the word "consider" in other contexts, we hold that R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires. Although a reviewing court must be able to discern from the magistrate's or juvenile court's decision and the court's judgment entry that the court satisfied the statutory requirement that it consider the enumerated factors, we may not graft onto the statute a requirement that the court include in its decision a written discussion of or express findings regarding each of the best-interest factors.

{¶ 32} That is not to say, nor do we suggest, that juvenile courts *should not* address the statutory best-interest factors. Several Ohio appellate districts already

encourage the juvenile courts in their districts to do so. *See In re K.T. 1*, 2018-Ohio-4312, 121 N.E.3d 847 (1st Dist.), at ¶ 46; *In re D.F.*, 7th Dist. Noble No. 16 NO 0439, 2017-Ohio-2711, at ¶ 38; *In re M.R.*, 3d Dist. Defiance No. 4-12-18, 2013-Ohio-1302, at ¶ 77, citing *In re D.H.*, 3d Dist. Marion No. 9-06-57, 2007-Ohio-1762, ¶ 20. We likewise strongly encourage juvenile courts to do so. As we have done when addressing other statutes that require a court to consider specific factors, we emphasize that the best practice is for the juvenile court to specifically address each factor. *See Douglas*, 20 Ohio St.3d at 36, 485 N.E.2d 711; *State v. Eppinger*, 91 Ohio St.3d 158, 166, 743 N.E.2d 881 (2001) (suggesting that a *model* sexual-offender-classification hearing should include an on-the-record discussion of the statutory factors under former R.C. 2950.09). Discussion of the statutory factors, we reasoned in *Eppinger*, aids appellate review and ensures that the offender receives a fair and complete hearing. *Id.* at 167. Discussion of the statutory best-interest factors in R.C. 2151.414(D)(1) would similarly facilitate appellate review of permanent-custody judgments. *See In re M.B.*, 9th Dist. Summit No. 21760, 2004-Ohio-597, ¶ 11 (although a trial court may not be statutorily required to provide detailed reasoning, an appellate court "needs sufficient information to 'review' the trial court's decision, else we are put in the position of speculating as to the evidence supporting the trial court's decision, making our own factual findings, and even judging the credibility of the witnesses"). A juvenile court's including a discussion of the best-interest factors in its decision granting permanent custody of a child to an agency is also likely to increase public confidence in the judicial process in this most important area of parental rights.

**The magistrate's decision and juvenile court's judgment entry
indicate consideration of the statutory best-interest factors**

{¶ 33} Having determined that R.C. 2151.414(D)(1) does not require a juvenile court to make specific findings regarding each best-interest factor listed in

R.C. 2151.414(D)(1) or to include in its decision or judgment entry a written discussion of each of those factors, we are left with the question whether the magistrate's decision and the juvenile court's judgment entry in this case establish that the juvenile court complied with its duty to consider the statutory best-interest factors. We conclude that the magistrate's decision and the juvenile court's judgment entry demonstrate that the court complied with R.C. 2151.414(D)(1).

{¶ 34} We first look to the magistrate's decision. The magistrate expressly concluded that it was in A.M.'s best interest to award permanent custody to the department. She also individually cited each of the factors set out in R.C. 2151.414(D)(1)(a) through (e), albeit in generic language not tailored to the facts of this case.

{¶ 35} The magistrate's consideration of certain of the factors in R.C. 2151.414(D)(1) is obvious. Regarding the wishes of the child, as expressed either by the child or by the child's guardian ad litem, under R.C. 2151.414(D)(1)(b), the magistrate noted the guardian ad litem's determination that an award of permanent custody, which would allow A.M. to be adopted, was in A.M.'s best interest. The magistrate also stated that she had consulted A.M. in an age-appropriate manner regarding the request for permanent custody. Regarding A.M.'s custodial history, under R.C. 2151.414(D)(1)(c), the magistrate found that A.M. had been in the temporary custody of the department since June 2017 and had previously been under the agency's protective supervision beginning in December 2016. And with respect to R.C. 2151.414(D)(1)(d), which requires the court to consider the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody, the magistrate reiterated the length of time A.M. had been under the department's protective supervision or in its temporary custody, having already noted the guardian ad litem's determination that permanent custody was in A.M.'s best interest because it would allow her to be adopted, thus creating a legally secure placement. Additional findings regarding

Brianna's failure to follow through with her mental-health treatment, continued use of marijuana, noncompliance with toxicology screens, failure to complete parenting classes, failure to complete high school, and failure to follow through with domestic-violence-prevention services all support a finding that establishing a legally secure placement for A.M. required a grant of permanent custody to the department.

{¶ 36} The magistrate's consideration of the remaining R.C. 2151.414(D)(1) factors is less obvious. The magistrate noted the requirement in R.C. 2151.414(D)(1)(e) that she consider whether R.C. 2151.414(E)(7) through (11) apply, but she made no specific finding in that regard. Instead, she stated, "Mother has a history of sporadic visitation. Mother complained that her 8:45 AM visits between April and June were too early for her. Mother missed visits and it ha[d] an adverse effect on the child." Those statements may be true—and they are supported by the record—but they do not relate to the factors listed in R.C. 2151.414(E)(7) through (11). Nevertheless, the record here contains no evidence that any of the factors in R.C. 2151.414(E)(7) through (11) apply, and no party has argued otherwise. *See In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 14 ("Because no evidence was presented to the trial court that any of the factors set forth in Sections 2151.414(E)(7) through (11) applied, * * * the trial court was not required to discuss or make findings under" R.C. 2151.414(D)(1)(e)). Given the magistrate's acknowledgment of R.C. 2151.414(D)(1)(e) as a consideration in her best-interest analysis and the inapplicability of R.C. 2151.414(E)(7) through (11), we conclude that neither the absence of a factual finding that R.C. 2151.414(E)(7) through (11) are inapplicable nor the magistrate's statement of findings unrelated to (E)(7) through (11) demonstrates prejudicial error.

{¶ 37} That leaves R.C. 2151.414(D)(1)(a), which is where Brianna primarily focuses her argument. She argues that the magistrate's decision is insufficient because it does not include analysis, discussion or a conclusion

regarding her interaction and interrelationship with A.M. Brianna points particularly to the absence of any discussion of trial testimony given by the caseworker and A.M.'s guardian ad litem regarding the bond between A.M. and Brianna and Brianna's recent visitation history. The record undoubtedly contains testimony of a loving relationship between Brianna and A.M. But the absence of discussion of that evidence by the magistrate does not mean that the magistrate did not take it into account when considering R.C. 2151.414(D)(1)(a).

{¶ 38} The magistrate specifically indicated that she considered R.C. 2151.414(D)(1)(a) by concluding that the interaction and interrelationship between A.M. and Brianna "cause[d]" A.M.'s best interest to be served by an award of permanent custody. But looking beyond that conclusory statement, findings elsewhere in the decision demonstrate that the magistrate considered evidence regarding the interaction and interrelationship between A.M. and Brianna. The magistrate noted the instance when Brianna became upset and stated that she wanted to sign away her parental rights to A.M. She also noted Brianna's history of sporadic visitation with A.M. and the adverse effects that Brianna's missed visits had on A.M. Finally, the magistrate found that Brianna demonstrated a lack of commitment toward A.M. Although they are scattered throughout her decision, those findings nevertheless demonstrate that the magistrate appropriately considered the interrelation between Brianna and A.M., as R.C. 2151.414(D)(1)(a) requires, in determining the best interest of the child.

{¶ 39} We now turn to the juvenile court's judgment entry overruling Brianna's objection and adopting the magistrate's decision. Pursuant to Juv.R. 40(D)(4)(d), if timely objections to a magistrate's decision are filed, the juvenile court must "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." The fact that a court does not cite any specific portion of a transcript or record does not demonstrate that the court failed to conduct an

independent review of the matters objected to. *Giovanni v. Bailey*, 9th Dist. Summit Nos. 28631 and 28676, 2018-Ohio-369, ¶ 21 (applying the analogous Civ.R. 53(D)(4)(d)).

{¶ 40} Here, the juvenile court noted its obligation to independently review the matters objected to. The court stated that it had independently reviewed the record, including the trial transcripts, heard oral argument on Brianna's objection, and considered all relevant factors, including those R.C. 2151.414(D)(1) requires, in its determination of A.M.'s best interest. Although the juvenile court did not restate factual findings from the magistrate's decision, it did hold that the magistrate properly determined the factual issues after viewing the witnesses' demeanors and judging their credibility, and it adopted the magistrate's decision as its own. And the court independently held, "[C]onsidering all relevant factors, including but not limited to those found in R.C. 2151.414(D), clear and convincing evidence established that it is in the child's best interest to be placed in the permanent custody of [the department]." When the record indicates that a juvenile court, in response to timely filed objections, has undertaken an independent review of the evidence, has acknowledged the applicable statutory framework, has adopted the magistrate's findings of fact, and has made the required conclusions upon clear and convincing evidence, we can only conclude that the court has satisfied its obligation under Juv.R. 40(D)(4)(d).

{¶ 41} In short, the magistrate's decision and juvenile court's judgment entry demonstrate that the court satisfied its statutory duty to consider the best-interest factors set out in R.C. 2151.414(D)(1)(a) through (e).

### Conclusion

{¶ 42} R.C. 2151.414(D)(1) requires a juvenile court to consider all relevant factors, including but not limited to the five factors set out in R.C. 2151.414(D)(1)(a) through (e), in determining the best interest of a child in a permanent-custody case. In applying that statute, it is preferable for a juvenile court

to provide some discussion or analysis of the best-interest factors to aid in appellate review and to increase confidence in its decision, but the statute itself requires only that the court *consider* those factors, and we may not impose additional requirements beyond the statutory language. Because the record here demonstrates that the magistrate and the juvenile court did consider the statutory factors, we affirm the judgment of the First District Court of Appeals.

Judgment affirmed.

KENNEDY, FISCHER, DEWINE, and STEWART, JJ., concur.

DONNELLY, J., dissents, with an opinion joined by O'CONNOR, C.J.

_____

**DONNELLY, J., dissenting.**

**{¶ 43}** The majority may be correct in holding that a juvenile court's statutory obligation to "consider" the best-interest factors of R.C. 2151.414(D)(1) does not include a requirement that the court explain its factual findings and reasoning for every individual factor contained in the statute. But the majority's holding does not solve the problem presented in this appeal; it only rejects a proposed solution. The problem remains: when a trial court does not provide adequate information or analysis to support its decision, an appellate court is put in the position of reverse-engineering the decision in order to review the trial court's presumed reasoning. Such reverse-engineering is problematic because it does not necessarily comply with the applicable standard of appellate review, it is not necessarily accurate, and as Judge Bergeron aptly noted in his opinion dissenting from the judgment of the First District Court of Appeals, "it places the appealing party at a substantial disadvantage because he or she lacks guidance on what to address on appeal, often rendering the appeal a hollow exercise," 2019-Ohio-2028, ¶ 41 (Bergeron, J., dissenting). Because the magistrate and juvenile court did not provide an adequate basis for meaningful appellate review in this case, I would reverse the judgment of the First District Court of Appeals.

{¶ 44} As the majority has thoroughly explained, the record contains many details regarding A.M.'s history and the relationship between A.M. and her mother, appellant, Brianna D., for the magistrate to consider and carefully weigh in determining whether granting permanent custody of A.M. to appellee, the Hamilton County Department of Job and Family Services, would be in A.M.'s best interest. But you would not know that from reading the magistrate's decision.

{¶ 45} In contrast to the majority's generous description of the magistrate's decision, I would describe the decision as a patchwork quilt of language taken from the September 20, 2017 adjudication-and-dispositional entry and from a generic template for permanent-custody decisions. In some places, A.M.'s name is inserted in the template in all capital letters, and in many places, the decision merely refers to the "child/ren." Some of the boilerplate language is completely irrelevant, some of it is relevant but not accompanied by any case-specific information, and some of it is accompanied by case-specific information that is not relevant to the boilerplate language. For example, in the portion of the decision addressing the wishes of the child pursuant to R.C. 2151.414(D)(1)(b), the magistrate stated the following:

> Ohio revised code section 2151.414(D)(1)(b) considers the wishes of the child/ren as expressed directly by the child/ren or through the child/ren's guardian ad litem, with due regard for the maturity of the child/ren in determining whether a termination of parental rights is in the child/ren's best interest. O.R.C. 2151.414(D)(1)(b). The Guardian ad Litem agrees that Permanent Custody is in the best interest of the child so that the child may be adopted.

{¶ 46} One cannot reasonably read the foregoing language as a description of the magistrate's personal interaction with A.M. and assessment of A.M.'s wishes. Even assuming that the final sentence is not boilerplate language from a

18

template, repeating a guardian ad litem's ("GAL's") best-interest recommendation does not tell us anything about the personal wishes of A.M.; it reflects the professional opinion of the GAL. In a custody proceeding, the determination by a GAL of what is in the child's best interest and what the child wants are two distinct facts, and sometimes, the two are in direct opposition to one another. *See In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232, 479 N.E.2d 257 (1985). The majority opinion weaves in the observation that the magistrate at one point "stated that she had consulted A.M. in an age-appropriate manner," majority opinion at ¶ 35, but the statement the majority is referring to does not indicate whether A.M. expressed any wishes; at the end of the magistrate's decision, after terminating the mother's parental rights and granting permanent custody to the agency, and after describing the agency's efforts to finalize permanent placement of A.M. with a new family, the magistrate included what appears to be a boilerplate sentence—with A.M.'s name inserted in all capital letters—that states: "The Court consulted [A.M.], in an age-appropriate manner, regarding the proposed permanency plan."

{¶ 47} My objective here is not to quibble over what the magistrate did or did not state at every point in her decision but to point out how much effort the majority of this court had to expend in extracting and assembling enough information to justify upholding the magistrate's decision. As another example, in the portion of the decision purportedly addressing the relationship between Brianna and A.M. pursuant to R.C. 2151.414(D)(1)(a), the magistrate stated the following:

> The interaction and interrelationship of the child/ren with their parent(s), sibling(s), relative(s), foster parent(s) and out-of-home provider(s) causes the child/ren's best interest to be served by the termination of parental rights.

Again, one cannot reasonably consider the foregoing boilerplate language to be evidence of the magistrate's individualized consideration of the relationship between A.M. and her mother. But the majority portrays the sentence as the magistrate's "concluding that the interaction and interrelationship between A.M. and Brianna 'cause[d]' A.M.'s best interest to be served by an award of permanent custody." Majority opinion at ¶ 38. The majority points to certain observations about Brianna's negative behaviors elsewhere in the magistrate's decision, but how are we to know that those negative behaviors are what led the magistrate to the ever-so-personalized conclusion about the relationship between the "parent(s)" and "child/ren?" We do not know whether the magistrate weighed these negative factors against positive ones, such as the unquestionable loving bond between Brianna and A.M., because such positive factors are nowhere to be found in the magistrate's decision. Did the magistrate ignore them altogether? Did she find that they carried less weight because of a credibility problem? Or did the magistrate carefully consider the positive factors and decide that they were outweighed by the teenage mother's failure to get her young, traumatized life together quickly enough?

{¶ 48} It is entirely possible that the last of these conjectures is the correct one and that the majority is right in assuming as much. Indeed, a majority of this court and a majority of the First District Court of Appeals set forth many facts and considerations that very well could have validly supported the magistrate's decision regarding A.M.'s best interest. But by doing so, the First District and this court created a decision on the juvenile court's behalf rather than reviewing the one that was made.

{¶ 49} Even if the magistrate was not required to provide a thorough explanation of the facts and analysis that applied to each separate best-interest factor under R.C. 2151.414(D)(1), the magistrate needed to provide an adequate basis for meaningful appellate arguments and meaningful appellate review. The

magistrate did not do so in this case, leaving Brianna to punch at the air and leaving the First District Court of Appeals to do "the work of the lower court[] * * * (without the benefit of the ability to judge credibility)," 2019-Ohio-2028 at ¶ 41 (Bergeron, J., dissenting).  Rather than guiding Ohio's appellate courts away from the problematic practice reflected in the First District's analysis, the majority reinforces the problem by repeating it.

{¶ 50} Accordingly, I dissent and would reverse the judgment of the First District Court of Appeals.

O'CONNOR, C.J., concurs in the foregoing opinion.

_____

Cynthia S. Daugherty, for appellant.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Nicholas C. Varney, Assistant Prosecuting Attorney, for appellee.

Treleven and Klingensmith Law, L.L.C., and Celia Klug Weingartner, attorney/guardian ad litem, for A.M.

_____