[Cite as *In re M.G.*, 2020-Ohio-5288.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re M.G.

Court of Appeals Nos. L-20-1114
L-20-1115

Trial Court No. JC 19272865

**DECISION AND JUDGMENT**

Decided: November 13, 2020

* * * * *

Laurel A. Kendall, for appellant J.B.

Christopher S. Clark, for appellant J.G.

Bradley W. King, for appellee.

* * * * *

**ZMUDA, P.J.**

## I. Introduction

{¶ 1} Appellants, J.G. ("mother") and J.B. ("father"), appeal the judgment of the Lucas County Court of Common Pleas, Juvenile Division, granting a motion for permanent custody filed by appellee, Lucas County Children Services ("LCCS"), thereby

terminating their parental rights with respect to their minor child, M.G. Finding no error below, we affirm.

## A. Facts and Procedural Background

{¶ 2} On January 9, 2019, LCCS received a referral alleging that mother tested positive for oxycodone, benzodiazepine, and amphetamines at the time of M.G.'s birth. Mother admitted to taking one oxycodone on the day M.G. was born.

{¶ 3} Fluid was removed from M.G.'s spinal cord, which subsequently tested positive for oxycodone, oxymorphone, amphetamine, alprazolam, clonazepam, 7-aminoclonazepam, nordiazepam, noroxycodone, and noroxymophone. M.G. was subsequently placed in the NICU and prescribed methadone to address withdrawal symptoms.

{¶ 4} LCCS was familiar with appellants based upon a previous case involving appellants' two-year-old child. In that case, the child was removed from appellants' care due to alcohol abuse, domestic violence and criminal charges involving both parents. Appellants failed to complete case plan services in that case.

{¶ 5} On February 5, 2019, LCCS filed a complaint in the present action, alleging that M.G. was dependent, neglected, and abused based upon the referral it received in January 2019. In its complaint, LCCS asked the court to hold a hearing on its motion for shelter care. LCCS also sought placement of M.G. in the temporary custody of either a relative or the agency. Additionally, LCCS asked the court to hold an adjudication

2.

hearing at which it could determine whether M.G. was a dependent, neglected, and abused child.

{¶ 6} An evidentiary hearing was held before a magistrate on February 5, 2019. Following the hearing, the magistrate found that there was probable cause to believe that shelter care was required to protect M.G. from immediate or threatened physical or emotional harm. The magistrate further concluded that continued residence of M.G. in mother's home would be contrary to M.G.'s best interests. Consequently, the magistrate granted interim temporary custody of M.G. to LCCS.

{¶ 7} Three weeks later, on February 25, 2019, LCCS filed its initial case plan with the goal of reunification. The case plan specified services for mother, including a dual diagnostic assessment, parenting services, housing, and income. At the time, father's paternity had not been established and his whereabouts were unknown.

{¶ 8} An adjudication and disposition hearing was subsequently held on March 28, 2019. Following the hearing, the magistrate determined that M.G. was dependent and abused, and awarded temporary custody of the child to LCCS. On April 2, 2019, the juvenile court approved and adopted the magistrate's order.

{¶ 9} On April 18, 2019, LCCS filed the results of a test confirming father's paternity regarding M.G. Father was then provided case plan services including case management services, a dual diagnostic assessment, and domestic violence services. An attorney was appointed for father, and the matter continued through discovery. At a

3.

hearing on August 12, 2019, the magistrate learned that mother had not completed her case plan services, and she was presently incarcerated.

{¶ 10} On November 22, 2019, LCCS filed its motion for permanent custody of M.G. In its motion, LCCS alleged that appellants failed to complete their case plan services and had not maintained consistent visitation with M.G. Moreover, LCCS claimed that appellants were living together despite a civil protection order prohibiting cohabitation due to domestic violence concerns that remained ongoing. Consequently, LCCS sought an award of permanent custody of M.G. and a determination from the juvenile court that M.G. could not be placed with appellants within a reasonable time or should not be placed with appellants under R.C. 2151.414(B)(1)(a), and permanent custody with LCCS was in M.G.'s best interest under R.C. 2151.414(D).

{¶ 11} The matter proceeded to a hearing on LCCS's motion for permanent custody on June 11, 2020. Mother and father failed to attend the hearing. At the outset of the hearing, mother's appointed counsel informed the court that she last heard from mother in later April 2020, when mother left her a message informing counsel that she was at a battered women's shelter at the YWCA. Mother informed her counsel that she would call counsel back, but never did so. Counsel explained to the trial court that mother was aware of the hearing date. Father's appointed counsel informed the trial court that she spoke with father the day prior to the hearing and father claimed he would appear for the trial.

4.

{¶ 12} LCCS called three witnesses to testify at the hearing. The first witness was LCCS caseworker Alexandria Sheares, who became involved with appellants in August 2019. Sheares testified that appellants had a prior history with LCCS, having previously lost custody of their three-year-old son. Additionally, Sheares indicated that mother lost custody of her oldest daughter.

{¶ 13} When she began working with appellants, Sheares learned that neither parent was participating in their case plan. Indeed, Sheares testified that appellants "haven't been involved at all. When I showed up to the 90-day review [in August], that's when father showed up. That was his first time ever being involved." According to Sheares, father provided no explanation as to his lack of participation up until that point.

{¶ 14} Following the 90-day review, Sheares added father to the case plan and offered him services including a dual (substance abuse and mental health) assessment, domestic violence classes, and parenting. Sheares also set up visitation for father at this time.

{¶ 15} Father subsequently completed his dual assessment, culminating in the recommendation for father to meet with his caseworker at least twice per month without medication management and complete a NIOP program. Father did not complete the NIOP program. Upon her return from maternity leave on March 30, 2020, Sheares learned that father had severed ties with his counselor. Sheares did not hear from father again.

5.

{¶ 16} Sheares went on to explain that father was ordered to complete domestic violence services due to "ongoing domestic violence in the home." She explained that appellants live together, and mother has reported domestic violence involving appellants to LCCS and law enforcement on multiple occasions. Despite the history of domestic violence, father did not complete domestic violence services.

{¶ 17} In sum, Sheares testified that father failed to complete any of his case plan services. Father initially visited with M.G., but ceased doing so in February 2020, prior to the agency's implementation of COVID-19 protocols. Sheares was unaware of the reason for father discontinuing his visitations with M.G.

{¶ 18} Regarding mother, Sheares testified that she first made contact with mother when mother was released from prison in October 2019. Upon her release, mother called Sheares and provided her with contact information. At this time, mother was added to the case plan and offered services including a dual assessment (which she completed while incarcerated), intensive outpatient treatment, mental health therapy, and domestic violence classes.

{¶ 19} Sheares stated that mother has not completed any case plan services, with the exception of her dual assessment. Like father, mother ceased communicating with Sheares during the pendency of this case. Sheares testified that she has not heard from mother since she returned to work following her maternity leave, despite several attempts to contact mother. Additionally, mother stopped appearing for visitations in February 2020.

{¶ 20} As she continued her testimony, Sheares indicated that she learned of several criminal charges related to the misuse of the 911 emergency system that remained pending against appellants at the time of the hearing. Sheares also asserted that LCCS decided to file its motion for permanent custody due to ongoing concerns of domestic violence and appellants' lack of commitment to M.G.

{¶ 21} Regarding placement, Sheares testified that M.G. was placed with a licensed adoptive home upon removal from the hospital at birth. Sheares asserted that M.G.'s foster parents were interested in adopting her, and further indicated that M.G. was "doing wonderful right now. * * * She is very playful, active. She's bonded really well to both caregivers. And I believe that it's in the best interest of her to remain in the home."

{¶ 22} For its second witness, LCCS called its caseworker, Brooke Hickman, to the stand. Hickman was the caseworker who assumed responsibility for this case from January 6, 2020 through March 30, 2020, during Sheares' maternity leave. Hickman testified that the last time she heard from mother was January 14, 2020, and the last time she received any communication from father was in March 2020.

{¶ 23} According to Hickman, appellants were already receiving case plan services by the time she began working with them. Hickman specified that mother was receiving mental health and substance abuse treatment, domestic violence victim classes, and parenting services. Father was offered substance abuse treatment, NIOP services at Harbor Behavior Health, domestic violence classes, and parenting services.

7.

{¶ 24} Hickman testified that appellants were initially compliant with the foregoing case plan services, but domestic violence continued to be an ongoing concern within their home. Hickman went on to state that mother stopped complying with her mental health and substance abuse treatment on January 16, 2020, and father stopped complying with his NIOP services on January 22, 2020. Moreover, father was no longer enrolled in his domestic violence program as of January 31, 2020. The program consisted of 18 sessions, but father stopped participating after his fourth session. Later in her testimony, Hickman testified that appellants' visitation with M.G. was sporadic.

{¶ 25} M.G.'s guardian ad litem, Angelina Wagner, was the third and final witness to testify at the hearing. Wagner was appointed the guardian ad litem in this case in February 2019. Based upon the investigation she conducted while serving as guardian ad litem, Wagner developed concerns regarding appellants' lack of consistency. Wagner testified,

> There was a period of time early on in the case where neither parent was
> available. Neither parent was contacting myself or the Agency. They did
> not visit. Father showed up at a review in August of last year, August
> 2019. Initially showed a lot of enthusiasm about the case, did start visiting,
> did start some services. I would say things seemed to fall off when mom
> was released from jail. Mom got out in October of 2019 and the parents
> resumed their relationship. And it was very rocky throughout up until
> today, to my knowledge.

8.

{¶ 26} Because of the foregoing concerns regarding appellants' inconsistent involvement with M.G., Wagner recommended an award of permanent custody to LCCS, and she prepared a report indicating the same that was admitted into evidence at the hearing. Wagner was asked why she recommended permanent custody to LCCS, and she explained that M.G. is flourishing in the home of her foster caregivers, with whom she has resided since she was released from the hospital after birth. Wagner indicated that M.G. is "very bonded with them and their family. In my opinion it would be harmful to her to take her out of that environment at this time. And the parents just have not made enough progress for me, personally, to think that it would be safe or appropriate to send [M.G.] home with them."

{¶ 27} Upon hearing the foregoing evidence, the juvenile court found that M.G. could not be placed with appellants within a reasonable time or should not be placed with appellants under R.C. 2151.414(B)(1)(a). Additionally, under R.C. 2151.414(E)(1), the court found that appellants failed continuously and repeatedly to substantially remedy the conditions causing M.G. to be placed outside the home, despite reasonable case planning and diligent efforts by LCCS aimed at assisting appellants in addressing those conditions. The court also concluded that appellants demonstrated a lack of commitment toward M.G. by failing to regularly support, visit, communicate with the child under R.C. 2151.414(E)(4), and had actually abandoned the child under R.C. 2151.414(E)(10) by failing to maintain contact or visitation with M.G. for over 90 days. The court noted that neither parent attended the permanent custody hearing, thereby demonstrating a lack of

9.

commitment to M.G. under R.C. 2151.414(E)(16). Finally, the juvenile court found that an award of permanent custody of M.G. to LCCS was in the child's best interest under R.C. 2151.414(D). Based upon these findings, the juvenile court granted LCCS's motion for permanent custody, and awarded permanent custody of M.G. to the agency.

{¶ 28} Thereafter, appellants each filed timely notices of appeal.

### B. Assignments of Error

{¶ 29} On appeal, mother assigns the following error for our review:

> The trial court erred in finding by clear and convincing evidence that it is in the best interest of the child to terminate appellant-mother's parental rights and to award permanent custody of the child to Lucas County Children Services ("LCCS").

{¶ 30} On appeal, father assigns the following error for our review:

> LCCS did not prove by clear and convincing evidence that custody could not be returned to father when he had started his case plan services, and time remained on the case at the time of trial.

{¶ 31} As appellants' assignments of error are interrelated, we will address them together.

### II. Analysis

{¶ 32} In their assignments of error, appellants argue that the juvenile court erred in awarding permanent custody of M.G. to LCCS. In essence, appellants each contend that the court's award was against the manifest weight of the evidence.

10.

{¶ 33} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. In conducting a review on manifest weight, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17.

{¶ 34} We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, fn. 3, 461 N.E.2d 1273 (1984).

{¶ 35} "R.C. 2151.414 sets out specific findings a juvenile court must make before granting an agency's motion for permanent custody of a child." *In re A.M.*, Slip Opinion No. 2020-Ohio-5102, ¶ 18. Under the facts of that case, which are analogous to the facts of the present case, the court went on to state that the juvenile court "must find by clear

11.

and convincing evidence (1) that one or more of the conditions in R.C. 2151.414(B)(1)(a) through (e) applies and (2) that a grant of permanent custody is in the child's best interest." *Id.*

{¶ 36} Here, the juvenile court concluded that permanent custody to LCCS was warranted based on its finding that M.G. could not be placed with appellants within a reasonable time or should not be placed with appellants under R.C. 2151.414(B)(1)(a), which provides:

(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in

another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶ 37} Concerning the determination as to whether a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents, R.C. 2151.414(E) provides, in relevant part:

If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to

13.

the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

* * *

(10) The parent has abandoned the child.

* * *

(16) Any other factor the court considers relevant.

{¶ 38} In the case sub judice, the juvenile court found that all of the above-referenced factors under R.C. 2151.414(E) were applicable in this case. Our review of the record reveals that unrefuted evidence supports the juvenile court's findings.

{¶ 39} Under R.C. 2151.414(E)(1), the court found that appellants failed continuously and repeatedly to substantially remedy the conditions causing M.G. to be placed outside the home, despite reasonable case planning and diligent efforts by LCCS aimed at assisting appellants in addressing those conditions. At the hearing, evidence was presented by LCCS of the ongoing, unaddressed domestic violence issues between appellants. Further, LCCS's caseworkers indicated that appellants failed to complete

their case plan services aimed at addressing the concerns prompting M.G.'s removal, including mental health and substance abuse issues.

{¶ 40} Under R.C. 2151.414(E)(4), the juvenile court concluded that appellants demonstrated a lack of commitment toward M.G. by failing to regularly support, visit, and communicate with the child. In this case, there was no evidence presented to establish that appellants provided any support for M.G. during the pendency of this case. Moreover, appellants ceased contacting M.G. at the end of January 2020, over four months prior to the June 11, 2020 hearing held on LCCS's motion for permanent custody. This evidence supports the juvenile court's finding under R.C. 2151.414(E)(4), especially when paired with the fact that appellants failed to attend the permanent custody hearing, another relevant factor identified by the juvenile court as demonstrative of appellants' lack of commitment to M.G. pursuant to R.C. 2151.414(E)(16).

{¶ 41} Finally, the juvenile court found that appellants abandoned the child under R.C. 2151.414(E)(10) by failing to maintain contact or visitation with M.G. for over 90 days. Under R.C. 2151.011(C), "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." As noted above, neither father nor mother had any contact with M.G. for at least four months prior to the permanent custody hearing in this case. Nonetheless, appellants argue that their inattentiveness should be excused due to the COVID-19 pandemic that began in March 2020. According to appellants, the pandemic

15.

brought with it a host of concerns that made it difficult to visit with M.G. However, no evidence was introduced by appellants to support their claim, and we will not disrupt the juvenile court's findings based on mere speculation. Further, appellants' visitations with M.G. ceased prior to LCCS's implementation of COVID-19 protocols. Thus, we find that clear and convincing evidence supported the juvenile court's determination that M.G. was abandoned under R.C. 2151.414(E)(10).

{¶ 42} In addition to its determination that M.G. could not be placed with appellants within a reasonable time or should not be placed with appellants, the court also found that an award of permanent custody to LCCS was in M.G.'s best interests under R.C. 2151.414(D)(1), which provides, in relevant part:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

* * *

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 43} In considering the child's best interest, the juvenile court is not required to discuss each of the factors under R.C. 2151.414(D)(1)(a) through (e), and the factors outlined therein are not exhaustive. *In re A.M.*, *supra*, Slip Opinion No. 2020-Ohio-5102, at ¶ 31. Indeed, "[c]onsideration is all the statute requires." *Id.*

{¶ 44} Under R.C. 2151.414(D)(1)(a), the juvenile court found that M.G. was placed in a "loving, caring foster home," where she is doing "amazingly well." The testimony presented by LCCS's witnesses supports the court's finding in this regard. In particular, Wagner testified that M.G. is flourishing in the home of her foster caregivers, and is "very bonded with them and their family."

17.

{¶ 45} Pursuant to R.C. 2151.414(D)(1)(c), the juvenile court noted the fact that M.G. had been in the temporary custody of LCCS for 12 or more months of a consecutive 22-month period. Indeed, M.G. was placed into LCCS's temporary custody on March 28, 2019, and was therefore in the agency's temporary custody for over 14 consecutive months at the time of the hearing.

{¶ 46} Under R.C. 2151.414(D)(1)(d), the juvenile court found that M.G.'s need for a legally secure permanent placement could not be achieved without granting LCCS permanent custody. All three witnesses that testified at the permanent custody hearing asserted that appellants could not provide M.G. with a permanent, stable placement. Both parents were offered case plan services that they did not complete during the pendency of this case. Moreover, neither parent consistently visited with M.G., and it had been many months since the last visit by the time the juvenile court held its hearing on LCCS's motion.

{¶ 47} Lastly, the juvenile court found that R.C. 2151.414(D)(1)(e) was applicable since appellants had abandoned M.G. under R.C. 2151.414(E)(10). As discussed above, the juvenile court's conclusion that M.G. was abandoned is supported by clear and convincing evidence.

{¶ 48} In light of the foregoing, we find that clear and convincing evidence supports the juvenile court's determination under R.C. 2151.414(B)(1)(a) that M.G. could not be returned to appellants within a reasonable time or should not be returned to appellants, and that an award of permanent custody to LCCS was in M.G.'s best interests

18.

under R.C. 2151.414(D)(1). Therefore, we find that the juvenile court's award of permanent custody to LCCS in this case was not against the manifest weight of the evidence.

{¶ 49} Accordingly, appellants' assignments of error are not well-taken.

### III. Conclusion

{¶ 50} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                  _____
                                                  JUDGE
Christine E. Mayle, J.          

                                            _____
Gene A. Zmuda, P.J.                         JUDGE
CONCUR.

                                            _____
                                                  JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.