[Cite as *In re M.M.*, 2022-Ohio-1569.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: M.M. | : | JUDGES: |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. John W. Wise, J. |
|  | : |  |
|  | : |  |
|  | : | Case No. 2021CA00159 |
|  | : |  |
|  | : |  |
|  | : | OPINION |

CHARACTER OF PROCEEDING:      Civil appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2020JCV00306

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      May 10, 2022

APPEARANCES:

For - JFS

BANDON J. WALTENBAUGH
402 2nd Street S.E.
Canton, OH 44702

For – Father

DEAN L. GRASE
700 Courtyard Centre
116 Cleveland Ave. N.W.
Canton, OH 44702

*Gwin, P.J.*

{¶1} Appellant-father, N.M. ["Father"] appeals the December 6, 2021 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, which terminated his parental rights with respect to his minor child M.M. (b. Mar 24, 2020) and granted permanent custody of the child to appellee, Stark County Department of Jobs and Family Services ("SCDJFS").[1]

*Facts and Procedural History*

{¶2} Father[2] is the biological father of M.M. b. Mar. 24, 2020. Father has one other child Y.M. 1T. at 7.[3] The case involving M.M. was commenced March 26, 2020 with the filing of a complaint alleging dependency and/or neglect. On May 20, 2020, SCDJFS amended the original complaint and deleted the original allegation of neglect. On May 20, 2020, the trial court found M.M. to be a dependent child and placed him into the temporary custody of SCDJFS.

{¶3} The allegations of the complaint detailed concerns regarding Father's homelessness, his being with Mother, and her extensive family services history. 1T. at 67.

{¶4} Case plan objectives for Father included obtain a psychological evaluation, steady employment, stable housing, domestic violence free, individual counseling, and Goodwill Parenting. 1T. at 67.

---

[1] For the Mother's appeal, see, *In re M.M.*, 5th District Stark No. 2021CA00156. Although Father couches his arguments in terms of "the parents," the instant appeal focuses upon those facts relevant to Father's efforts to challenge the motion for permanent custody.

[2] See, OH ST Supp. R. 44(H) and 45(D) concerning the use of personal identifiers.

[3] The Tuscarawas County Department of Jobs and Family Services was granted permanent custody of Y.M on Aug. 4, 2021. 1T. at 7.

{¶5} On September 23, 2020, the trial court reviewed the case. 1T. at 54-55. The trial court approved and adopted the case plan, found that SCDJFS had made reasonable efforts to finalize the permanency planning in effect, compelling reasons existed to preclude a filing of permanent custody, and ordered the status quo. Id. Specifically, the trial court found that the Father had not successfully completed parenting classes, was not making progress in counseling, Father had recently disclosed domestic violence by Mother and described the visits with the child as "stressful and high anxiety". *Magistrate's Order,* Sept. 23, 2020. The court found that Father completed his drug assessment with no recommendations. The magistrate noted that Father was employed, the family had appropriate housing, and the family was paying their bills. Id. The magistrate further noted that Father had changed his story. Originally Father had stated that Mother hit him. Later, he changed his story claiming he was attacked by a stranger on the street, not Mother.. Id.

{¶6} On December 29, 2020, Father and Mother filed motions to amend the case plan to change counselors, and to change the provider of their parenting program.

{¶7} On January 6, 2021, the trial court denied both motions filed by the parents. 1T. at 55. Specifically, the trial court found that the parents had already changed service providers multiple times throughout the case including, but not limited to, counselors, psychological assessors, and parenting class providers, and that more changes were not warranted. The parents did not file objections to that decision. 1T. at 56.

{¶8} On February 9, 2021, SCDJFS filed a motion seeking permanent custody of the child. Mother filed a Motion on April 15, 2021 asking the Court to return the child or in the alterative, extend temporary custody. (Docket No. 95). On April 15, 2021,

Mother filed a Motion to grant custody to her sister Jimilah Lundy. (Docket No. 94). Mother's motions set at the same time as the hearing on the permanent custody motion. *Findings of Fact and Conclusions of Law,* filed Dec. 6, 2021 at 33.

{¶9} The Father of the child filed a Motion requesting that this matter be transferred to Tuscarawas County. The Court granted that Motion with an Order filed on April 19, 2021. However, on May 12, 2021, the Court vacated that Entry. Permanent custody proceedings were set for August 5, 2021.

{¶10} The following evidence was presented during the hearing.

### Father's case plan

{¶11} Father was ordered to complete a parenting evaluation, parenting classes, individual counseling, that he be free of domestic violence, and that Father obtain stable housing and income. 1T. at 28; 67.

### Father's mental health evaluation

{¶12} Dr. Aimee Thomas a psychologist and Licensed Professional Clinical Counselor for Lighthouse Family Center met with Father and completed a parenting evaluation report on January 13, 2020. 1T. at 96; Exhibit 5[4]; *Findings of Fact and Conclusions of Law,* filed Dec. 6, 2021 at 43.

{¶13} Dr. Thomas reported that Father was experiencing some adjustment issues related to his involvement with the agency and the removal of the child from his custody. 1T. at 97. Father also was a very passive individual. Father described himself as more

---

[4] Actually, Father completed two (2) assessments in this case. Dr. Thomas completed the first assessment. This first assessment was a parenting assessment. (SCDJFS Exhibit 5). Dr. Dean completed the second assessment. The second assessment, which was a psychological assessment, occurred at Father's request. 1T. at 67-68; 96; SCDJFS Exhibit 3. Dr. Dean did not testify during the permanent custody proceedings. Both assessments resulted in similar conclusions for Father. *Findings of Fact and Conclusions of Law,* filed Dec. 6, 2021 at 44.

care free.  However, Dr. Thomas found Father presented with many features consistent with dependent personality disorder.  Dr. Thomas described Father as someone who might tolerate an unhealthy relationship because of that passivity and dependency.  1T. at 97.

{¶14} Dr. Thomas described Father's problems as having a negative impact on his ability to parent.  Dr. Thomas explained that if they are involved with a partner who can be combative or has serious mental health issues that would need to be addressed.  Such individuals would have a hard time intervening, protecting themselves and children from any problems that could occur based on that person's mental health disorder or anger management problems.  1T. at 98.

{¶15} Dr. Thomas diagnosed Father with adjustment disorder with depression and anxiety and unspecified personality disorder with dependent and passive traits.  1T. at 98.  Dr. Thomas recommended Father,

> I recommended that he participate in counseling towards processing his relationship with [Mother].  Um and the concerns in that relationship.  Also understanding and educating him about the gravity of concerns with her mental health with the hope that he might become an ally to assist her in addressing those concerns.  I recommended that he successfully complete Goodwill Parenting classes as well and demonstrate the ability to provide for the family financially.

1T. at 98-99. Dr. Thomas opined that Father's frequent attempts to change mental health counselors would be a concern.  Id. at 99.

### Father's interaction with the child

{¶16} Father regularly visits his son. The visits are supervised at the Agency. Agency workers have observed concerns regarding basic safety techniques and Father not listening to redirection. When Father would visit on his own, there were concerns with diapering and Father did not support M.M.'s head in spite of redirection.

### Father's counseling

{¶17} Father received counseling services from Kimberly Ford, who was certified by the Court as an expert witness in counseling and couples counseling. 1T. at 141. At the time of the Permanent Custod hearing, Father had attended twelve weekly counseling sessions with Ms. Ford. Id. at 142. Ms. Ford testified that Father had made good progress in the counseling sessions. 1T. at 143.

{¶18} Anne Myers testified that she was the individual therapist for Mother and Father. She further provided couples counseling to the parents. Anne Myers testified that there was progress with the parties in couples' therapy. 1T. at 118. However, Ms. Myers testified that Mother and Father did not reach any of their individual therapeutic goals. 1T. at 114-117. Ms. Myers testified that the Mother and the Father did not reach any goals in couples counseling. Id. at 117.

### Relative Placement

{¶19} Jimilah Lundy, Mother's sister, testified that she had contact with both the Tuscarawas County Children Services and the SCDJFS. 1T. at 187. Ms. Lundy is employed with the IRS and resides in a two-bedroom apartment located in Bartlett, Tennessee. Id. at 184-185. She testified that she has no criminal history. She further

explained that she had one of her children at the age of fourteen and the other at the age of fifteen. She informed the court that children services in Nevada became involved when she had her children due to her age when she became a mother, but she raised both of her children to the age of adulthood. Ms. Lundy testified that she was willing to take custody of M.M. and follow any orders the court deems necessary. She testified that she spoke with the SCDJFS caseworker about her desire to take custody of M.M., but the caseworker never got back to her as she had promised.

**{¶20}** Jamie Grunder testified that she never spoke to Ms. Lundy, and never considered her for placement of M.M. 1T. at 32; 41-42.

## Recommendations

**{¶21}** On July 29, 2021, the Guardian ad Litem for the child filed her final report, recommending that SCDJFS be granted permanent custody of the child.

**{¶22}** Ms. Grice testified that Father had not made progress in his case plan, and that the child would be at imminent risk of harm if returned to Father's custody. Ms. Grice testified that she did not believe an extension of the case would change her recommendation that permanent custody be granted. 1T. at 73.

## Entry granting permanent custody

**{¶23}** The trial court overruled Mother's motion to extend temporary custody and Mother's motion for legal custody to the maternal Aunt Jimilah Lundy.

**{¶24}** The trial court found Mother and Father have had parental rights involuntarily terminated with respect to a sibling of M.M. pursuant to section 2151.414 or section or section 2151.353 or 2151.415 of the Revised Code, and both Mother and Father have failed to provide clear and convincing evidence to prove that, notwithstanding the prior

termination, Mother and/or Father can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of M.M.

{¶25} The Court found by clear and convincing evidence that the child cannot be placed with either parent within a reasonable period, and should not be placed with such parents pursuant to R.C. 2151.414 specifically citing the parents' failure to remedy the problems that initially caused the child to be placed outside the home.

{¶26} The trial court further found that despite the minimal bond that may have developed between any parent and M.M., the harm caused by severing the bond with the parents is outweighed by the benefits of permanency in the child's life. The trial court concluded it is in the best interest of M.M. to grant Permanent Custody to SCDJFS for purposes of adoption. M.M. deserves to be in a stable, loving environment.

*Assignment of Error*

{¶27} Father raises one Assignment of Error.

{¶28} "I. THE TRIAL COURT'S DECISION DENYING PLAINTIFF/APPELLANT'S MOTION TO EXTEND TEMPORARY CUSTODY PURSUANT TO O.R.C. § 2151.415(D) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

*Law and Analysis*

{¶29} Father argues that he has shown "dedication to completing their case plans and to reunifying with M.M. This is evidenced by their continuing to engage frequently and regularly with therapists that were qualified as experts by the Court." [Appellant's Brief at 11.] Father contends the testimony from the trial demonstrates that the parents met the conditions set forth in R.C. 215.415(D) to be granted a six-month extension of Temporary Custody in order to complete their case plan.[Appellant's Brief at 14].

**Standard of Review**

{¶30} R.C. 2151.415(D)(1) authorizes the trial court to extend temporary custody for six months only if it finds, by clear and convincing evidence, that such an extension is in the best interest of the child and that "there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension."

{¶31} We review a trial court's decision of a motion to extend temporary custody for abuse of discretion. *Matter of C.K.,* 5th Dist. Muskingum No. CT2020-0027, 2020-Ohio-5437, ¶ 21, *citing In re E.T.*, 9th Dist. Summit No. 22720, 2005-Ohio-6087, ¶ 9.

{¶32} An abuse of discretion can be found where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick*, 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; *In re Guardianship of S .H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi*, 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823, ¶54.

**Issue for Appellate Review**:  *Whether the juvenile court's decision to not extend temporary custody pursuant to R.C. 2151.415(D)(1) is clearly untenable, legally incorrect or amounts to a denial of justice, or whether the judgment reaches an end or purpose not justified by reason and the evidence.*

{¶33} In the case at bar, we note that Father did not file a motion to extend temporary custody pursuant to R.C. 2151.415(D)(1).[5] Further, as the SCDJFS correctly notes,

---

[5] Mother did file such a motion.

It is also important to note that, because of the delay in scheduling the permanent custody trial, a six-month extension of temporary custody would only have lasted until September 26, 2021. This is because the original complaint was filed on March 26, 2020, and, under R.C. 2151.353 (G), SCJFS temporary custody of the child would have ended on March 26, 2021, and the six-month extension would have ended on September 26, 2021. This date was only approximately six weeks after the permanent custody trial and would have been over for months by the time of the trial court's decision.

Appellee's Brief at 15. The record does not establish that there was clear and convincing evidence that a six-week extension would have been in the child's best interest, that there had been significant case plan progress, or that reunification was likely.

### Requirements for Permanent Custody Awards

**{¶34}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶35}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

**{¶36}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody.  In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**Parental Placement within a Reasonable Time– R.C. 2151.414(B)(1)(a).**

**{¶37}** The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents.  R.C. 2151.414(E).  The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent.  A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors.  The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time.  *See In re William S.*, 75 Ohio St.3d 95, 1996–Ohio–182, 661 N.E.2d 738; *In re Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher*, 4th Dist. Athens No. 1470, 1991 WL 62145(Apr. 10, 1991).

**{¶38}** R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents.  Specifically, Section (E) provides, in pertinent part, as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the

Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate

permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

\* \* \*

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

\* \* \*

(16) Any other factor the court considers relevant.

{¶39} As set forth above, the trial court's findings are based upon competent credible evidence. The record includes the recommendation of the guardian ad litem for the child, and the testimony of the witnesses at trial. The trial court was in the best position to determine the credibility of the witnesses.

{¶40} In the instant case, the trial court did not explicitly cite to a single factor in R.C. 2151.414(E). However, the detailed findings in the December 6, 2021 Judgment Entry and the entire record in this matter make it apparent the trial court relied on several of the factors in R.C. 2151.414(E), including R.C. 2151.414(E)(1), failure to remedy

conditions  and R.C. 2151.414(E)(2), chronic mental illness or intellectual disability.  See, *In re B.W.*,  5th Dist. Tuscarawas No. 2016 AP 09 0045, 2017-Ohio-605, ¶ 39, *appeal not allowed,*  149 Ohio St.3d 1409.

{¶41} The trial court noted Father's mental health concerns, Father's refusal to seek professional help directed at dealing with his ability to stand up to Mother and protect the child, and Father's constant changing of mental health professionals demonstrate Father's significant cognitive deficits and their effect on his ability to understand his own needs and those of his child.  The trial court additionally noted that Father has lost custody of one other child.  Despite offering numerous services, Father was unable or unwilling to mitigate the concerns that led to the child's removal.

{¶42} A parent's successful completion of the terms of a case plan is not dispositive on the issue of reunification.  The ultimate question under R.C. 2151.414(A)(1) is whether the parent has substantially remedied the conditions that caused the child's removal.  *In re Shchigelski*, 11th Dist. Geauga No.  99–G–2241, 2000 WL 1568388(Oct. 20, 2000); *In re McKenzie*, 9th Dist. Wayne No. 95CA0015, 1995 WL 608285(Oct. 18, 1995).  A parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed—the case plan is simply a means to a goal, but not the goal itself.  Hence, the courts have held that the successful completion of case plan requirements does not preclude a grant of permanent custody to a social services agency.  *In re J.L.,* 8th Dist. No. 84368, 2004–Ohio–6024, ¶ 20; *In re Mraz*, 12th Dist. Nos. CA2002–05–011, CA2002–07–014, 2002–Ohio–7278.  In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this Court found where, despite marginal compliance with some aspects of the case plan, the exact problems that

led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

**{¶43}** The evidence demonstrated the very little successful efforts Father had made on the case plan. On that point, the evidence demonstrates that any improvement that Father has made in her life is tentative and, perhaps, temporary, and that he is at risk of relapse. The trial court found that, regardless of Father's compliance with aspects of his case plan, he was still not able to be a successful parent to this child or protect the child.

**{¶44}** We find there is competent and credible evidence to support the trial court's determination that the child cannot be placed with Father within a reasonable time or should not be placed with Father.

### Reasonable Efforts

**{¶45}** The Supreme Court of Ohio in *In re C.F.*, 113 Ohio St.3d 73, 78, 862 N.E. 2d 816, 821(2007) noted,

> [N]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.' R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151. 412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal 'to eliminate with all due speed

the need for the out-of-home placement so that the child can safely return home.' Under R.C. 2151.413(D)(3)(b), an agency may not file for permanent custody under R.C. 2151. 413(D) - the '12 months out of 22 rule'- '[i]f reasonable efforts to return the child to the child's home are required under section 2151. 419' and the agency has not provided the services required by the case plan.

{¶46} A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011(12th Dist. 1992). The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *In re J.D.*, 3rd Dist. Hancock Nos. 5-10-34, 2011-Ohio-1458. The child's health and safety is paramount in determining whether reasonable efforts were made. *In re R.P.*, 5th Dist. Tuscarawas No. 2011-Ohio-5378.

{¶47} R.C. 2151.419 requires the trial court to determine whether the agency filing the complaint for custody "has made reasonable efforts * * * to eliminate the continued removal of the child from his home, or to make it possible for the child to return home." Subsection (B)(1) mandates the trial court to issue written findings of fact setting forth the reasonable efforts made by the agency, including a brief description of "the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from his home or enable the child to return home."

{¶48} However, even where a trial court has failed to include in its judgment entry, the findings contemplated by R.C. 2151.419(B)(1) we have found that the ultimate issue

is the reasonableness of the Department's efforts, and have concluded those efforts may be determined from the record. *In the matter of Kell/Bess Children*, 5th Dist. No. 97CA0278, 1998 WL 401767(Mar. 23, 1998); *Hunt v. Ickes*, 5th Dist. Tuscarawas No. 2014 AP 08 0032, 2015-Ohio-309, ¶19

**{¶49}** We find there is competent and credible evidence to support the trial court's determination that SCDJFS efforts were reasonable and diligent under the circumstances of the case.

**{¶50}** The trial court found that neither parent has made significant progress on the case plan. The trial court noted,

> The Stark County Department of Job and Family Services made numerous allowances for this family in order to allow the parents to address their mental health and parenting issues. The multiple allowances made in this case were to no avail. Multiple assessments, parenting classes, multiple team meetings, and multiple counselors were provided to this family. This court has never witnessed such a monumental attempt by Stark County Department of Job and Family Services to provide so many accommodations to one family in an attempt at successful reunification of a family.

*Findings of Fact and Conclusions of Law,* filed Dec. 6, 2021 at 47. We find that the record supports that SCDJFS was working toward the goal of reunification. We find no evidence of dishonest purpose, conscious wrongdoing, or breach of duty on the part of SCDJFS.

**{¶51}** Having reviewed the record, we find that SCDJFS made a good faith effort to reunify Father and his child. Furthermore, the record contains clear and convincing

evidence to support the court's determination that the child could not be placed with Father.

**The Best Interest of the Child**

{¶52} An agency that seeks permanent custody of a child bears the burden of proving by clear and convincing evidence that the grant of permanent custody is in the child's best interest. *In re B.C.,* 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 26. R.C. 2151.414(D)(1) sets out a non-exhaustive list of factors the court must consider:

{¶53} R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

{¶54} The factors in R.C. 2151.414(E)(7) through (11), which are referred to in R.C. 2151.414(D)(1)(e), involve a parent's having been convicted of or pleaded guilty to specific criminal offenses against the child, the child's sibling or another child who lived in the parent's household; a parent's withholding medical treatment or food from the child; a parent's repeatedly placing the child at substantial risk of harm because of alcohol or drug abuse; a parent's abandoning the child; and a parent's having had parental rights as to the child's sibling involuntarily terminated.

{¶55} No one element is given greater weight or heightened significance. *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816. R.C. 2151.414(D)(1) does

not require a juvenile court to make specific findings regarding each best-interest factor listed in R.C. 2151.414(D)(1) or to include in its decision or judgment entry a written discussion of each of those factors. *In re: A.M.,* Slip Opinion No. 2020-Ohio-5102, 2020WL6439610 (Nov. 3, 2020), ¶33.

**{¶56}** A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), *citing In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

**{¶57}** The trial court rejected *Mother's* request to transfer custody of M.M. to her sister,

> To place [M.M.] in the legal custody of his Maternal Aunt, Jimilah Lundy would place [M.M.] in jeopardy. Attorney Waltenbaugh effectively cross-examined Jimilah Lundy. Still, it was evident from her testimony both on direct and cross-examination, Ms. Lundy does not believe Mother poses any threat to [M.M.] in spite of Mother's anger management and mental health issues. It is evident that, like Father, Ms. Lundy defers to Mother's dominant personality and it would not be in the best interest for this court to grant Ms. Lundy legal custody of [M.M.].

*Findings of Fact and Conclusions of Law,* filed Dec. 6, 2021 at 51-52.

**{¶58}** We conclude that the juvenile court's judgment entry demonstrate that the court complied with R.C. 2151.414(D)(1).

**{¶59}** Both the caseworker and the GAL testified it would be in the child's best interests to be placed in the permanent custody of the Agency. The trial court noted that M.M. was placed in the same foster home as one of his brothers. M.M. appears well adjusted and bonded in his present placement. Considering the many obstacles in Father's life the trial court found the child's need for a legally secure placement cannot be achieved without permanent custody.

**{¶60}** Nothing in the record before us demonstrates that more time or a return of custody to the Father will in any way benefit the child.

**{¶61}** In the present case, the trial court concluded the child's need for legally secure placement could not be achieved without awarding permanent custody to SCDJFS. Upon review of the record, the record supports the trial court's finding that granting the motion for permanent custody is in the child's best interest.

**{¶62}** In short, the juvenile court's judgment entry demonstrate that the court satisfied its statutory duty to consider the best interest factors set out in R.C. 2151.414(D)(1)(a) through (e).

**{¶63}** For these reasons, we find that the trial court's determination that Father had failed to remedy the issues that caused the initial removal and therefore the child could not be placed with him within a reasonable time or should not be placed with him was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent

custody to SCDJFS was in the child's best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶64}** We further find that the record does not establish that there was clear and convincing evidence that a six-week extension would have been in the child's best interest, that there had been significant case plan progress, or that reunification was likely.

**{¶65}** Because the evidence in the record supports the trial court's judgment, we overrule Appellant-Father's sole assignment of error, and affirm the decision of the Stark County Court of Common Pleas, Family Court Division.


By Gwin, P. J.,

Hoffman, J., and

Wise, John J., concur